IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EOG RESOURCES, INC<br>Plaintiff, | §<br>§<br>§ | |
| | § | C.A. NO. ________________ |
| VS. | § | |
| | § | ADMIRALTY |
| | § | |
| TRANSOCEAN DEEPWATER DRILLING, INC., TRANSOCEAN, INC. and MODU TRANSOCEAN MARIANAS<br>Defendant | §<br>§<br>§ | |

**EOG RESOURCES, INC.'S**
**ORIGINAL COMPLAINT**

COMES NOW, t hrough undersigned counsel, Plaintiff, EOG RESOURCES, INC. (hereinafter "EOG") who presents the following Complaint against Transocean Deepwater Drilling, Inc., Transocean, Inc. and the MODU Transocean Marianas. Plaintiff would show the following:

**I.**

1. Jurisdiction of the case is founded on the basis of Title 28 U.S.C. § 1333. This is an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h).

**II.**

2. EOG Resources, Inc. ("EOG") is a Delaware corporation that's principal place of business is located in Houston, Texas.

**III.**

3. Defendant Transocean Deepwater Drilling, Inc. is a corporation organized and existing under the laws of Delaware. Its principal place of business is located in Houston, Texas.

IV.

4. Defendant Transocean, Inc. is a corporation organized and existing under the laws of Delaware. Its principal place of business is located in Houston, Texas.

V.

5. The MODU Transocean Marianas is a semi-submersible drilling vessel registered in the Marshall Islands.

VI.

6. Wherever it is said in this complaint "Transocean" it is meant Defendant Transocean Deepwater Drilling, Inc. and Defendant Transocean, Inc. jointly and severally, by and through their agents, servants, employees, suppliers, representatives, subsidiaries, subcontractors and/or contractors acting in the course and scope of their respective employments, individually and/or collectively.

VII.

7. At all material times, Transocean was the charterer, operator and/or owner of the MODU Transocean Marianas. At all material times, Transocean had a right of dominion and control over the MODU Transocean Marianas.

VIII.

8. At all material times, Transocean employed the crew working aboard the MODU Transocean Marianas.

IX.

9. At all material times, EOG was the owner of a natural gas undersea pipeline system in the Gulf of Mexico, including in particular a 10-inch natural gas undersea pipeline in Eugene Island Block 135 (hereinafter " EOG 10-inch pipeline"). Said 10-inch pipeline was positioned on

the seabed in a location where it had a lawful right to be and in conformance with all relevant codes, ordinances, laws and standards.

X.

10. EOG's 10-inch pipeline was used by EOG to carry natural gas from three undersea gas wells located at Platform A in Eugene Island Block 135 to a 16-inch undersea natural gas pipeline in Eugene Island Bock 135 (herein after "16-inch pipeline") owned by Transcontinental Gas Pipeline Corporation, a non party to this dispute (hereinafter "Transco"). Production from the three wells at Platform A was carried to market through EOG's 10-inch pipeline and Transco's 16-inch pipeline.

XI.

11. Somewhere to the south, south east of EOG's 10-inch pipeline Transocean had moored its MODU Transocean Marianas. On or about 22-23 September 2005 the moorings of the MODU Transocean Marianas failed and the vessel was cast adrift. The vessel ("rig") drifted 140 miles or so northwest of its original location.

XII.

12. Transocean's runaway rig or the rig's components allided with EOG's 10-inch gas pipeline in Eugene Island Block 135 of the Gulf of Mexico.

XIII.

13. Transocean's runaway rig or the rig's components allided with non-party Transco's 16-inch gas pipeline in Eugene Island Block 135 of the Gulf of Mexico.

XIV.

14. Transco's 16-inch pipeline was taken out of service for repair of damages caused by Transocean's runaway rig. Said period of repairs extended from approximately 10 March 2006 to 20 February 2007.

XV.

15. EOG's 10-inch pipeline and EOG's three undersea natural gas wells at Platform A were shut in while Transco repaired the 16-inch pipeline. During the shut in EOG could not use its 10-inch pipeline to transport to market the valuable gas rights it owned in the three wells served by Platform A. Said shut in continued until Transco completed repairs on its 16-inch pipeline and restored production to the 16-inch pipeline. Production was restored to Transco's 16-inch pipeline on or about 20 February 2007.

XVI.

16. EOG restored production to its three wells and 10-inch pipeline on or about 20 February 2007 when production was restored to non-party Transco's 16-inch pipeline. When EOG restored production pressures to the 10-inch pipeline, it was discovered the 10-inch pipeline was ruptured. The 10-inch pipeline and the three wells at Platform A were shut in for a second time as a result of damages caused by Transocean's runaway rig. The second period of shut in caused by Transocean's runaway rig lasted from on or about 20 February 2007 to on or about 19 March 2007.

XVII.

17. EOG was unaware its 10-inch pipeline had been previously ruptured by Transocean's runaway rig until pressure and product were restored to the 10-inch pipeline on or about 20 February 2007. The damage was concealed beneath 70 or so feet of water.

XVIII.

18. As a result of the damage caused by Transocean's runaway rig, EOG's damages are currently estimated to be in excess of $20,000,000.00. These damages include, without limitation, damage to the pipeline, loss of line pack and inventory, re-commissioning costs, repair costs, replacement costs, mitigation costs, monitoring expenses, increased costs and expenses, licensing, lost revenues, diminution in value, surveying and other damages to be shown at trial of this matter.

XIX.

NEGLIGENCE

19. Paragraphs 1-18 above are incorporated by reference into this section as if quoted herein in entirety.

20. EOG avers the aforementioned casualty and resulting damages were not caused or contributed to by any fault, neglect, lack of care or other fault of EOG but rather resulted from the fault, neglect, and lack of care on the part of Transocean and/or the unseaworthiness of Transocean's runaway MODU Transocean Marianas in the following particulars, among others, which will be shown upon trial:

(a) The rig was improperly anchored or moored.

(b) The rig's anchoring and mooring system was not sufficient to withstand the foreseeable weather of the Gulf of Mexico, including hurricanes and tropical storms.

(c) The mooring location chosen for the rig was unsafe given the rig's capabilities and the foreseeable path and intensity of weather in the Gulf of Mexico, including hurricanes and tropical storms.

(d) The rig's crew and its management charterers, operators and/or owners were negligent in preparing the rig to withstand the effects of weather in the Gulf of Mexico, including anticipated hurricane force winds and rough seas.

(e) The rig's crew and its management charterers, operators and/or owners were negligent in the operation of the rig and its anchor mooring and anchoring system.

(f) The rig's crew and its management charterers, operators and/or owners were negligent in maintaining and repairing the rig's mooring and anchoring systems.

(g) The rig crew and its management charterers, operators and/or owners were negligent in selecting the placement of mooring and anchoring equipment in place at the time of the occurrence.

(h) The rig was unseaworthy or abandoned by crew in an unseaworthy condition prior to the storm.

(i) The rig's crew and its management charterers, operators and/or owners were negligent for improperly training the rig's crew and other personnel to prepare the rig to withstand the effects of a storm.

(j) Failing to have and/or follow a suitable emergency plan in place for acquiring necessary resources to secure the rig in the event of a hurricane entering the Gulf of Mexico.

(k) The management, charterers, operators and/or owners of the rig were negligent for improperly training the rig's crew in the operation and maintenance of the rig's anchoring or mooring system.

(l) The operators, management charterers, operators and/or owners of the rig were negligent in such other acts or omissions that will be established at the time of trial or which become apparent during discovery.

21. EOG would show Transocean committed the above acts of negligence, neglect and lack of care directly and/or through the acts and omissions, jointly and severally, by and through agents, servants, employees, suppliers, representatives, operators, producers, subsidiaries, subcontractors and/or contractors acting in the course and scope of their respective employments, individually and/or collectively.

**XX.**

**RES IPSA LOQUITUR**

22. Paragraphs 1-22 above are incorporated by reference into this section as if quoted herein in entirety.

23. The doctrine of *res ipsa loquitur* applies to the occurrence at issue. The runaway rig and all appurtenant mooring apparatuses and attached equipment were at all material times under the exclusive control of Transocean and the casualty at issue was of a type that does not ordinarily occur in the absence of negligence.

**XXI.**

**MARITIME PRESUMPTION OF FAULT**

24. Paragraphs 1-24 above are incorporated by reference into this section as if quoted herein in entirety.

25. Transocean is presumed to be at fault by virtue of the maritime presumption of fault arising when a moving vessel, such as the MODU Transocean Marianas, strikes a stationary object, such as the pipeline owned and/or operated by EOG.

26. Transocean is presumed to be at fault for violations of maritime law, including but not limited to the duty to act with reasonable care to prevent mobile offshore drilling rigs from breaking free, becoming hazards to navigation and ultimately alliding with a stationary object resting in a location where it had a lawful right to be.

XXII.

TRESPASS

27. Paragraphs 1-26 above are incorporated by reference into this section as if quoted herein in entirety.

28. Without waiving any of the claims asserted above, EOG alleges Transocean upon the occurrence in question is liable in trespass for all damages caused by the MODU Transocean Marianas.

XXIII.

FOR COURT'S EYES ONLY

29. EOG by and through the undersigned counsel, brings this cause of action jointly with its Insurers seeking recovery as pled in its entirety for the uninsured portion of damages. Insurers are a real party in interest seeking recovery of monies paid to EOG. Insurers are hereby asserting their subrogation rights to recover monies paid to EOG against Transocean. These Insurers may be properly identified as Certain Underwriters of Lloyd's, London, Subscribing to Policy No. 901/LE 0482297, and Certain Domestic Underwriters Subscribing to Policy No. MSW-0325.

## XXIV.

## DAMAGES

30. Paragraphs 1-30 above are incorporated by reference into this section as if quoted herein in entirety.

31. Said acts of negligence and the other allegations contained herein were all a proximate and/or producing cause of damages suffered by EOG. Said damages EOG has suffered, or will suffer in the future, as a result of Transocean's wrongful acts and omissions include but are not limited to the following:

(a) Costs to survey EOG's damaged 10-inch pipeline and ancillary apparatus and other lines damaged by the occurrence and flooding thereto.

(b) Costs to repair EOG's 10-inch pipeline and ancillary apparatus and other lines damaged by the occurrence and flooding thereto.

(c) Loss of use of EOG's 10-inch pipeline during the period of repairs to the Transco 16 inch undersea gas pipeline.

(d) Loss of use of EOG's 10-inch pipeline during the period of repairs to the 10 inch undersea gas pipeline.

(e) Lost natural gas product caused by the rupture of EOG's 10-inch pipeline.

(f) Consequential damages, including but not limited to loss of use, lost revenue, loss of value, lost business opportunities and other incidental damages for the undersea gas pipeline and ancillary apparatus damaged by the occurrence and flooding thereto.

(g) Prejudgment interest at the highest rate allowed by law and equity, and

(h) Post-judgment interest at the highest rate allowed by law and equity.

32. Though precise assessment of EOG' past and future damages will be the subject of expert testimony at time of trial, EOG asserts the damages it has suffered and will suffer as a result of the occurrence may ultimately be in excess of $20,000,000.

XXV.

33. Where it is said at any point in this complaint Transocean undertook any act or omission or assumed any responsibility or liability or other obligation it is meant Transocean directly and or/ jointly and severally, by and through Transocean's agents, servants, employees, suppliers, representatives, subcontractors and/or contractors acting in the course and scope of their respective employments, individually and/or collectively.

XXVI.

34. EOG requests process and *in rem* service on the MODU Transocean Marianas be withheld at this time.

PRAYER

WHEREFORE, Premises Considered, Plaintiff EOG Resources, Inc. prays the Court, after due proceedings, enter judgment in favor of Plaintiff and against Defendant Transocean Deepwater Drilling, Inc., Defendant Transocean, Inc. and Defendant MODU Transocean Marianas for all damages as set forth herein and for all other relief in law and equity to which EOG may show itself justly entitled.

Respectfully Submitted,

**DONATO MINX & BROWN, P.C.**

By: /s/ Mark A. Youngjohn

Mark A. Youngjohn
ATTORNEY IN CHARGE
State Bar of Texas No. 24028247
Federal ID No. 431054
Houston, TX 77027
(713) 877-1112 Telephone
(713) 877-1138 Facsimile

**ATTORNEYS FOR PLAINTIFF EOG RESOURCES, INC.**

OF COUNSEL:
Brook F. Minx
State Bar of Texas No. 00789905
Federal ID No. 18723
Mark R. Pickering
State Bar of Texas No. 00795591
Federal ID No. 20963
3200 Southwest Freeway, Ste. 2300
Houston, TX 77027
(713) 877-1112 Telephone
(713) 877-1138 Facsimile

**ATTORNEYS FOR PLAINTIFF EOG RESOURCES, INC.**